2020 IL App (1st) 180501-U

FIRST DISTRICT,
SECOND DIVISION
February 25, 2020

No. 1-18-0501

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 17 CR 4216 |
| | ) | |
| MARTELL EDWARDS, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*:   In prosecution for possession of a controlled substance with intent to deliver, defense counsel did not provide ineffective assistance by conceding defendant's guilt to lesser included offense of possession of a controlled substance.

¶ 2     Defendant Martell Edwards was charged with possession of a controlled substance with intent to deliver, a Class 1 felony. During his bench trial, defense counsel conceded guilt to the lesser included offense of possession of a controlled substance, a Class 4 felony, but argued that

the State had not shown intent to deliver. The trial court agreed and found defendant guilty of possession of a controlled substance.

¶ 3    Edwards appeals, arguing that his counsel was ineffective for conceding his guilt to the lesser included offense. We disagree and affirm.

¶ 4                                 BACKGROUND

¶ 5    On February 25, 2017, at around 5:30 p.m., Officer Jozef Czak and Officer Lesch were patrolling in an unmarked squad car. They saw Edwards exit a vacant lot and shout, to no one in particular, "Blows!" According to Czak, the vacant lot was a "known high narcotic area," and "blows" was street terminology for heroin. Although there were civilians in the vicinity, neither officer saw Edwards approach anyone or reach for anything.

¶ 6    The officers exited their squad car and placed Edwards in custody. Lesch searched Edwards and, in his pants pocket, found six Ziploc bags containing white powder. The powder tested positive for heroin and weighed 1.1 grams.

¶ 7    At Edwards' bench trial, after the State rested, the defense moved for a directed verdict, which the court denied. The defense requested a date to call a witness who could be present on the following Monday. The following colloquy then occurred:

> "THE COURT: Lawyers approach. Just lawyers. The most they've shown is a Class 4 possession right now. Is he hoping for better than that?
>
> ASSISTANT PUBLIC DEFENDER: No.
>
> THE COURT: If that's all he wants, then we can resolve it now. If he thinks he wants…
>
> APD: I don't think he's looking for a not guilty.
>
> THE COURT: Huh?

APD: I don't think he's looking for a not guilty.

THE COURT: He's not looking for that?

APD: So I think we can—

THE COURT: It's successfully tried down at this point."

The defense then rested without presenting evidence. The trial court admonished Edwards about his right to testify and asked if he wanted to testify, to which Edwards replied he did not. However, the court did not ask Edwards whether he wished to concede guilt to Class 4 possession of a controlled substance.

¶ 8    During closing arguments, the defense argued: "Judge, at best, the officers testified that Mr. Edwards had something in his possession; that was heroin. Based on that, Judge, we'd be asking for a not guilty as to possession with intent but as to a Class 4 possession."

¶ 9    The trial court found Edwards not guilty as to possession with intent to deliver, but guilty as to Class 4 possession. The court explained that Czak and Lesch were "credible and compelling beyond a reasonable doubt," and they "certainly" had legitimate reason to approach and engage Edwards, but the State failed to prove Edwards intended to deliver the drugs found on his person. Following a sentencing hearing, the court sentenced Edwards to three years' imprisonment.

¶ 10                                ANALYSIS

¶ 11    Edwards argues that his trial counsel was ineffective for conceding his guilt to Class 4 possession of a controlled substance. The State acknowledges that the trial court erred in accepting counsel's concession without seeking confirmation from Edwards, but argues that the error is harmless and does not warrant reversal where counsel's actions were not *per se*

ineffective and Edwards cannot meet his burden of showing ineffectiveness under *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 12    To establish ineffective assistance of counsel under *Strickland*, a defendant must generally prove that (i) counsel's performance was objectively unreasonable and (ii) but for counsel's errors, the outcome of the proceeding would have been different. *People v. Patterson*, 2014 IL 115102, ¶ 81 (citing *Strickland*, 466 U.S. at 692). In some exceptional circumstances, prejudice will be presumed. *United States v. Cronic*, 466 U.S. 648, 658-59 (1984); *Strickland*, 466 U.S. at 692. In particular, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic*, 466 U.S. at 659.

¶ 13    Our supreme court examined this proposition in *People v. Hattery*, 109 Ill. 2d 449 (1985) (finding *per se* ineffective assistance under *Cronic*), and *People v. Johnson*, 128 Ill. 2d 253 (1989) (distinguishing *Cronic/Hattery* and rejecting defendant's claim of *per se* ineffective assistance). In *Hattery*, defendant pled not guilty to multiple counts of murder. *Hattery*, 109 Ill. 2d at 453. His counsel, in his opening statement, admitted his guilt:

> " 'We are not asking you to find Charles Hattery not guilty. At the end of your deliberations, you will find him guilty of murder. *** [A]nd you will find him eligible for the death penalty. The question, and the only question before you, will be whether to impose the death penalty on Charles Hattery for trying to save the life of his family.' " *Id.* at 458-59.

During the guilt-innocence phase of the trial, defense counsel advanced no theory of defense and made no closing statement. Counsel merely attempted to show that defendant was compelled by his codefendant to murder the victims—a mitigating circumstance to preclude imposition of the

death penalty. *Id.* at 459. On appeal, the *Hattery* court held that counsel's unequivocal concession of guilt "deprived defendant of the right of having the issue of his guilt or innocence presented to the jury as an adversarial issue." *Id.* at 464. Thus, "the prosecution's case was not subjected to the 'meaningful adversarial testing' required by the sixth amendment," and counsel's actions were *per se* ineffective under *Cronic*. *Id.* (quoting *Cronic*, 466 U.S. at 656).

¶ 14      Our supreme court reached the opposite conclusion in *Johnson*, 128 Ill. 2d at 269, cautioning against reading its holding in *Hattery* broadly and instructing that "the rule in *Hattery* must be narrowly construed." Following an incident in which defendant fatally shot one man, wounded two others, and took personal property from them, defendant pled not guilty to charges of intentional murder, attempted murder, felony murder, armed violence, aggravated battery, armed robbery, theft, and unlawful restraint. *Id.* at 257-58. At trial, defendant's counsel conceded his guilt to murder, but held the State to its burden of proof on the other charges, especially the felony murder charge. *Id.* at 270. Counsel also vigorously contested defendant's eligibility for the death penalty. *Id.*

¶ 15      The *Johnson* court stated:

> "Though *Hattery* condemned the practice, we did not in that case hold that it is *per se* ineffectiveness whenever the defense attorney concedes his client's guilt to offenses in which there is overwhelming evidence of guilt but fails to show on the record consent by defendant. This would be especially true when counsel presents a strong defense to the other charges." *Id.* at 269.

Unlike in *Hattery*, defense counsel in *Johnson* did not "abandon even the pretense of defending his client" by conceding every element of every charge. (Internal quotation marks omitted.) *Id.* at 270. Rather, defense counsel asserted a theory of defense to "a number of charges." *Id.*

Under these circumstances, the *Johnson* court held that prejudice could not be presumed under *Cronic/Hattery*. *Id.* at 270-71.

¶ 16    Similarly, in *People v. Adkins*, 239 Ill. 2d 1, 43-44 (2010), the court held that defense counsel was not *per se* ineffective under *Cronic/Hattery* where counsel conceded defendant's guilt to residential burglary but did not concede his guilt to murder. Citing *Johnson*, the *Adkins* court observed that defendant's counsel "did subject the State's case to meaningful adversarial testing; and they did present a theory of the defense." *Id.*

¶ 17    We find the present case analogous to *Johnson* and *Adkins* rather than *Hattery*. Although defense counsel conceded guilt as to the lesser included offense of simple possession, counsel held the State to its burden of proof on the greater offense of possession with intent to deliver, and, in fact, obtained an acquittal on that charge. Accordingly, this is not a case where " 'counsel *entirely* fail[ed] to subject the prosecution's case to meaningful adversarial testing.' " (Emphasis in original.) *Johnson*, 128 Ill. 2d at 266 (quoting *Cronic*, 466 U.S. at 659).

¶ 18    Because prejudice may not be presumed, we apply the *Strickland* test to determine if Edwards received ineffective assistance. Thus, Edwards bears the burden of showing a "reasonable probability" that the outcome of his trial would have been different if counsel had not conceded his guilt to Class 4 possession. (Internal quotation marks omitted.) *Patterson*, 2014 IL 115102, ¶ 81. On this record, we do not find Edwards has met this burden. The evidence against Edwards was overwhelming, particularly since the trial court found the State's officers were "credible and compelling beyond a reasonable doubt." Although Edwards apparently intended to call a witness, no offer of proof was made as to that witness's testimony, and we will not engage in baseless speculation as to what he or she might have said. See *People v. Bew*, 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere

speculation as to prejudice"). Since Edwards has not demonstrated prejudice, we reject his ineffective assistance claim. *Patterson*, 2014 IL 115102, ¶ 87 (ineffective assistance claims may be decided on prejudice prong alone).

¶ 19 As a final note, we observe that the trial court erred in accepting counsel's concession without seeking confirmation from Edwards. Although counsel represented that Edwards was "[not] looking for a not guilty," the trial court should have verified that with Edwards. See *People v. Medina*, 221 Ill. 2d 394, 409 (2006) ("[W]hen a lesser-included offense instruction is tendered, we believe the trial court should conduct an inquiry of defense counsel, in defendant's presence, to determine whether counsel has advised defendant of the potential penalties associated with the lesser-included offense, and the court should thereafter ask defendant whether he agrees with the tender"). Nevertheless, for the reasons discussed above, Edwards has not met his burden of showing that his counsel was ineffective under either *Hattery* or *Strickland*.

¶ 20                                     CONCLUSION

¶ 21 Because counsel's actions did not constitute *per se* ineffective assistance, and because defendant cannot establish prejudice under *Strickland*, we affirm the judgment of the trial court.

¶ 22 Affirmed.